UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:18-CR-36-TAV-DCP-15 |
| | ) | |
| JIMMY DEAN LIVESAY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on defendant's motion for compassionate release [Doc. 829], "Motion for USCS Fed Rules Civ. Proc. Rule 60 Relief from a Judgment or Order" [Doc. 871], "Motion for Reduction of Sentence under First Step Act" [Doc. 877], "Motion for USCS Fed. Rules Crim. Proc. R. 36 Clerical Error" [Doc. 879], "Motion under 28 U.S.C. § 2241" [Doc. 880], and "Motion to Correct My Unlawful Sentence as a Career Offender under Federal Law" [Doc. 882], as well as numerous letters, supplements, and notices of appeal, which the Court construes as further supplements [Docs. 854, 855, 856, 857, 858, 863, 867, 870, 873, 878, 881, 887, 888, 889, 890].  The government has responded to several of these filings [Docs. 864, 874, 875, 876].

For the reasons set forth more fully below, defendant's motions [Docs. 829, 871, 877, 879, 880] are **DENIED**, with the exception of defendant's "Motion to Correct My Unlawful Sentence as a Career Offender under Federal Law" [Doc. 882] which the Clerk is **DIRECTED** to **TRANSFER** to the Sixth Circuit under 28 U.S.C. § 1631 for authorization.

## I. Background

On September 4, 2018, defendant pleaded guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) [Docs. 160, 199]. As part of the second amended plea agreement, defendant agreed to facts sufficient to support his plea to this charge and agreed that he conspired to distribute at least 50 grams but less than 150 grams of actual methamphetamine [Doc. 160 ¶ 3]. Given defendant's agreement to plead guilty, the government agreed not to oppose a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and, if defendant's offense level was 16 or greater, to move for an additional 1-level reduction under U.S.S.G. § 3E1.1(b) [*Id.* ¶ 6].

The presentence investigation report ("PSR") calculated defendant's base offense level as 30, based on the agreed-upon drug quantity of at least 50 grams but less than 150 grams of actual methamphetamine [Doc. 278 ¶ 72]. However, because defendant was a career offender, the PSR increased his offense level to 37 [*Id.* ¶ 78]. The PSR then reduced this by 3 levels for acceptance of responsibility, resulting in a total offense level of 34 [*Id.* ¶¶ 79–81].

As to the career offender classification, the PSR noted that defendant's 2007 and 2013 convictions for aggravated assault in Claiborne County were predicate offenses under the career offender guideline [*Id.* ¶¶ 96, 98]. Defendant's criminal history points resulted in a criminal history category of IV, but this was increased to VI, because defendant was a career offender [*Id.* ¶¶ 100–01]. Given the total offense level of 34 and criminal history

2

category of VI, the PSR calculated defendant's guideline range as 262 to 327 months' imprisonment [*Id.* ¶ 122]. Defendant did not object to the PSR's calculations [Doc. 293].

The Court ultimately granted a downward departure and sentenced defendant to 165 months' imprisonment, followed by 5 years of supervised release [Docs. 560, 561].

Since his sentencing in April 2019, defendant has filed a plethora of pro se motions seeking release from prison. In October 2019, defendant filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, alleging his trial counsel was ineffective [Doc. 718], which the Court ultimately denied [Docs. 883, 884].

Defendant also filed a motion for compassionate release along with several supplements [Docs. 732, 733, 739, 741, 760], which the Court denied, finding that the 18 U.S.C. § 3553(a) factors weighed against granting compassionate release [Doc. 780, p. 4]. In so finding, the Court noted the serious nature of the instant offense and defendant's "extensive criminal history, which includes multiple counts of violent crimes such as assault, aggravated assault, and domestic abuse" [*Id.* at 6–7]. The Court acknowledged the risk of COVID-19, defendant's efforts at rehabilitation, defendant's desire to be home with his family, and defendant's family's struggles in his absence, but found that these factors did not outweigh the other § 3553(a) factors [*Id.* at 7–8].

Defendant sought reconsideration [Doc. 783] of this denial, which the Court denied, again citing defendant's criminal history, and further noting that defendant has served only a small fraction of his sentence in this case [Doc. 789, pp. 1–2]. Defendant appealed the

Court's denial of his motion for compassionate release [Doc. 782], and the Sixth Circuit affirmed, holding that:

> [T]he district court explicitly recognized [defendant's] efforts at rehabilitation, his family situation and the risk to him from his medical conditions and COVID-19. But the court also accurately noted that (1) Livesay's offense was serious, as it involved a conspiracy to distribute methamphetamine; (2) he has an extensive and violent criminal history that qualified him as a career offender, and he has a history of probation revocations,; [sic] (3) he had served only a small fraction of his 165-month sentence, which was well below his guidelines range of 262 to 327 months; and (4) many of the staff and inmates at his institution have been vaccinated against COVID-19. Based on those considerations, the district court reasonably concluded that § 3553(a) factors such as the seriousness of Livesay's offense, his history and characteristics, and the need to promote respect for the law and provide just punishment outweighed the other pertinent sentencing factors and counseled against compassionate release.

[Doc. 819, p. 3].

Defendant also filed a motion for "COVID credits" because he was "locked down in a cell for almost a year" [Doc. 826]. The Court denied this motion because defendant had provided no statutory authority that would permit the Court to grant the requested relief [Doc. 827]. Defendant subsequently filed the instant motions and supplements which the Court will now address in turn.

## II.     Motion for Compassionate Release

### A.     Parties' Arguments

In his second motion for compassionate release, defendant cites the prison lockdown resulting from the COVID-19 pandemic, his rehabilitative efforts, his separation from his family, his need to support his son who is experiencing difficulties in school and sports, and his desire to help his parents maintain their property, in support of his request for

4

release [Doc. 829]. Numerous friends and family members submitted letters supporting defendant's request [Docs. 854, 854-1, 855, 856, 85, 858, 863]. Of particular note, defendant's mother writes that she needs defendant's help as she is getting older and suffered a brain aneurism/stroke [Doc. 854, p. 1]. Likewise, defendant's father writes that he would like to have defendant home to "help me on my place" as he is "not able to do anything anymore" [Doc. 854-1, p. 1].

The government responded that defendant has not established extraordinary and compelling reasons for release under § 3582(c)(1)(A) [Doc. 864, p. 3]. As to prison conditions resulting from the COVID-19 pandemic, the government states that this is not extraordinary as all prisoners, and, to a lesser extent, all citizens, have been subject to additional restrictions to limit the spread of COVID-19. Moreover, complaints about prison conditions should be raised in a separate civil suit, not a motion for compassionate release. As to defendant's rehabilitative efforts, the government states that Congress has specified that rehabilitation of a defendant is not an extraordinary and compelling reason warranting compassionate release [*Id.* at 4]. As to his alleged family circumstances, the government states that defendant has not shown that his mother is incapacitated or that he is the only available caregiver, as required for family circumstances to rise to the level of an extraordinary and compelling reason for compassionate release [*Id.* at 4–5].

The government also contends that, even if defendant could establish extraordinary and compelling reasons for compassionate release, the 18 U.S.C. § 3553(a) factors weigh against him [*Id.* at 5]. The government notes defendant's extensive criminal history

5

including multiple violent crimes, and the fact that defendant was deemed a career offender [*Id.*]. Additionally, defendant has served a relatively short period of his total sentence [*Id.* at 6].

Defendant then filed a supplement to his motion for compassionate release, stating that he suffered a medical event while imprisoned and now has cerebrovascular disease [Doc. 867, p. 1]. He also asserts that his wife has had three surgeries, including one open heart surgery [*Id.*]. He states that it is difficult for her to work and pay the bills and she is going into debt [*Id.* at 2–3]. He also states that his parents are over 65 years old and need him to help on their farm [*Id.* at 2]. He indicates that his mother had a brain aneurism and his father had eye surgery and needs knee surgery [*Id.* at 2–3].

Subsequently, defendant filed another supplement to his motion for compassionate release, stating that he developed post-traumatic stress disorder ("PTSD") after military service, and suffers from bipolar disorder and attention deficit disorder ("ADD") [Doc. 870, p. 1]. He also contends that he was improperly sentenced as a career offender, as his instant offense of conviction cannot be considered a "controlled substance offense" for purposes of the career offender guideline, since only the commentary, and not the guideline itself, includes inchoate offenses [*Id.* at 1–3]. He contends that his "unlawful sentence" is an extraordinary and compelling reason for compassionate release [*Id.* at 3].

In another supplement, defendant reiterates his arguments regarding his career offender enhancement [Doc. 873, pp. 1–2]. He also reiterated the medical incident he suffered while imprisoned, and that he now is recovering from a stroke and has

cerebrovascular disease, combined with the risk of COVID-19 [*Id.* at 2]. He also points to "My wife's medical issues. My stepson's issues with school and sports. My good report of my rehabilitation in prison." He continues on to state "my Dad's knees are gone . . . I'm only son. He could use my help. My mother has had a brain [aneurism]. They are both well over 60 years of age" [*Id.*]. He states that he has a "huge and wonderful family that would love to see" him and has a job waiting for him [*Id.* at 3]. He contends that the *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) decision was an intervening change of law that constitutes an extraordinary and compelling ground for compassionate release [*Id.* at 3–4].

The government filed a supplemental response arguing that defendant still has not established extraordinary and compelling grounds for compassionate release [Doc. 874, p. 1]. Regarding his family circumstances, the government notes that defendant still has not shown that any family member is incapacitated or that his is the only available caretaker such that those circumstances could be deemed extraordinary and compelling for purpose of § 3582(c)(1)(A) [*Id.* at 2]. The government also argues that defendant's challenges to his career-offender enhancement are not reviewable under § 3582(c)(1)(A) [*Id.* at 5]. *Havis* was a non-retroactive rule only applicable on direct review [*Id.*]. Further, habeas is the appropriate place to raise challenges to the lawfulness of a sentence [*Id.* at 5–6]. Moreover, even if defendant were not a career offender under the Guidelines today, his criminal history is extensive and includes multiple violent crimes, and he remains subject to a 10-year mandatory minimum sentence which he has not yet served [*Id.* at 6].

Defendant then filed a "Motion for Reduction of Sentence under First Step Act" [Doc. 877], which appears to be another supplement to his motion for compassionate release. Defendant argues that the Supreme Court recently held that a district court may consider an intervening change of law or fact in determining whether to grant a sentence reduction under § 3582(c)(1)(A), citing *Concepcion v. United States*, 597 U.S. 481 (2022) [*Id.* at 1]. Defendant states that his father is having his first knee surgery on June 19, 2023, and then will need surgery on his other knee, and is unable to walk [*Id.* at 3]. He states that his father owns almost 200 acres on a mountain, he is the only son, and the property is currently "growing up" because no one "is able to bushhog our property" [*Id.*].

In his next supplement, defendant appears to argue that courts within the Sixth Circuit's have been inconsistent in determining whether non-retroactive changes in sentencing law may constitute extraordinary and compelling reasons for compassionate release [Doc. 878, p. 1].

Defendant subsequently filed a supplement claiming that the government stated that he had not shown rehabilitative efforts and attaching inmate reports on his rehabilitative efforts [Doc. 888].

Defendant then filed a "Motion to Appeal Compassionate Release" [Doc. 889], which the Court interprets as another supplement to his motion for compassionate release, as the Court had not yet entered any order for appeal on the pending motion for compassionate release. Defendant appears to contend that the government has abused its discretion in failing to respond to all of his arguments [*Id.* at 1]. He also reiterates his

8

career-offender argument and states that he has served more than the low end of his corrected guidelines [*Id.* at 1–2]. Defendant states that he has set forth several reasons for granting him compassionate release including "COVID-19, overlong sentence, rehabilitation efforts, no disciplinary, several family issues, program statements, progress reports" [*Id.* at 3].

Finally, defendant filed a supplement to his compassionate release motion [Doc. 890] in which he attaches two letters, dated October 10, 2023, stating that 8 inmates had tested positive for COVID-19, 7 of which were in isolation and 1 of which was hospitalized [*Id.* at 2–3].

### B.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

9

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence

reduction "after considering the factors set forth in section 3553(a) to the extent that they

are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 829].

If the exhaustion requirement is satisfied, courts must then follow the statute's

three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted).

In considering a compassionate release motion, "district courts may deny compassionate

release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and

do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### C. Analysis

#### i. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government has not addressed exhaustion in its response [Doc. 864]. However, in its response to defendant's first compassionate release motion, which raised many of the same issues as this motion, the government stated that it was waiving enforcement of the exhaustion requirement [Doc. 772, p. 1]. Given the government's failure to address the issue in the context of the instant motion, the Court will construe the government's waiver of the exhaustion requirement to apply to the instant motion for compassionate release.

#### ii. Extraordinary and Compelling Reasons

Turning to whether defendant has set forth extraordinary and compelling grounds for relief, the Court first notes that the Sixth Circuit previously held that "[i]n cases where

11

incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement of § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). This was so because the applicable policy statement, United States Sentencing Guideline § 1B1.13, as written at the time, did not contemplate inmate-filed motions for compassionate release, but instead, was limited to circumstances where the Bureau of Prisons filed a motion on an inmate's behalf. *Id.* at 1109–10; *see also* U.S.S.G. § 1B1.13 (2018).

However, the Sentencing Commission amended the policy statement in § 1B1.13, effective November 1, 2023, to encompass inmate-filed motions for compassionate release. U.S.S.G. § 1B1.13 (2023). It thus appears that the Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to inmate-filed motions for compassionate release is no longer consistent with the Guidelines. *See United States v. Ringgold*, No. ELH-17-232, 2023 WL 7410895, at *5–6 (D. Md. Nov. 8, 2023) ("[I]t appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A).") However, "[t]he new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release." *United States v. Davis*, No. 3:20-cr-16, 2023 WL 7356579, at *2 (W.D. N.C. Nov. 7, 2023).

12

As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," and discusses when the medical circumstances of the defendant, the age of the defendant, the family circumstances of the defendant, the defendant's victimization in custody, and other reasons may constitute extraordinary circumstances. U.S.S.G. § 1B1.13(b)(1)–(5). Here, defendant cites the following as extraordinary and compelling grounds warranting his release: (1) conditions of imprisonment during the COVID-19 pandemic; (2) his rehabilitative efforts; (3) his son's difficulties with school and sports; (4) his mother's health problems; (5) his father's health problems; (6) his medical problems and associated COVID-19 risk; (7) his wife's medical and financial problems; (8) his mental illness; and (9) changes in the law that he believes would result in a lower sentence today.

### 1.    Defendant's Medical Condition(s)

The policy statement provides four situations when a defendant's medical condition may constitute an extraordinary and compelling reason for release:

(A)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). . . .

(B)    The defendant is—

(i)    suffering from a serious physical or medical condition,

(ii)    suffering from a serious functional or cognitive impairment, or

(iii)    experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

13

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)     The defendant presents the following circumstances—

(i)     the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak or infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)     due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)     such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

Defendant appears to raise two grounds regarding his health. First, he states that he suffered a medical event while imprisoned, possibly a stroke, and now has cerebrovascular disease, which he indicates results in an increased risk of COVID-19 [Doc. 867, p. 1; Doc. 873, p. 2]. Defendant also states that he suffers from PTSD, bipolar disorder, and ADD [Doc. 870, p. 1].

The Court notes that defendant has not provided medical records to support his claims of physical and/or mental health issues. However, even accepting as true defendant's representations regarding his physical and mental health, defendant has not alleged a medical condition that constitutes an extraordinary and compelling circumstance warranting relief. First, defendant does not allege that he has any physical or mental health

14

issues that are "terminal" under § 1B1.13(b)(1)(A).  Second, defendant does not allege that his physical or mental health issues substantially diminish his ability to provide self-care in a correctional facility, as required under § 1B1.13(b)(1)(B).  Third, defendant has not alleged that his physical or mental health issues require specialized medical attention that has not been provided, as required under § 1B1.13(b)(1)(C).  To the contrary, defendant notes that he was "rushed" to the hospital for his physical health issues and almost underwent brain surgery [Doc. 873, p. 2].  Accordingly, defendant has not even alleged that his physical or mental health issues meet the criteria set forth in § 1B1.13(b)(1)(A)–(C).

Under the final subsection of § 1B1.13(b)(1), defendant's health issues may be extraordinary and compelling grounds for release when combined with the increased risk of contracting, or becoming severely ill from, COVID-19.  But defendant has not adequately established all three requirements of § 1B1.13(b)(1)(D).  First, defendant has not established that he is housed at a correctional facility affected by an ongoing outbreak of COVID-19.  Records indicate that defendant is housed at Federal Correctional Institution ("FCI") Fort Dix.  Federal Bureau of Prisons' Inmate Locator, www.bop.gov/inmateloc// (last accessed Nov. 14, 2023).  The Bureau of Prisons' website indicates that FCI Fort Dix is operating at Level 1 Operations, meaning that the medical isolation rate is less than 2% and the new community positive cases is less than 100 per 100,000 over the last 7 days.  FCI Fort Dix, bop.gov/locations/institutions/ftd/ (last accessed Nov. 14, 2023) and COVID-19 Modified Operations Plan & Matrix,

15

bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Nov. 14, 2023). Further, the BOP's website indicates that there is only 1 open case of COVID-19 at FCI Fort Dix and 2484 of 3781 inmates have been fully vaccinated against COVID-19. "Latest COVID-19 Data," Inmate COVID-19 Data, bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed Nov. 14, 2023).[1] Accordingly, it does not appear that there is currently an ongoing COVID-19 outbreak at FCI Fort Dix, nor has defendant provided any information that such an outbreak is imminent.

Second, even if there was an ongoing or imminent COVID-19 outbreak at FCI Fort Dix, defendant has not shown that his physical or mental health issues increase his risk of suffering severe medical complications or death if he contracts COVID-19. Defendant does not argue that any of his mental health conditions increase his risk of suffering complications from COVID-19. However, the Center for Disease Control ("CDC") has recognized stroke or cerebrovascular disease as a condition that "can make you more likely to get very sick from COVID-19." "People with Certain Medical Conditions," COVID, 19, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 14, 2023). Accepting as true defendant's claim that he

---

[1] The Court notes that defendant filed a supplement indicating 8 inmates tested positive for COVID-19, 7 of which were in isolation and 1 of which was hospitalized [Doc. 890]. However, defendant's documentation is dated October 10, 2023, and therefore, no longer reflects the most accurate COVID-19 infection rates. Moreover, this documentation does not specify to which BOP facility it relates, although the Court will presume it relates to defendant's facility, FCI Fort Dix, given the heading of the letter indicating it originated in New Jersey, where FCI Fort Dix is located [*Id.* at 2].

16

suffers from cerebrovascular disease, such medical condition could increase his risk of suffering severe medical complications or death from COVID-19.

However, defendant has not shown that any risk of severe medical complications or death cannot be adequately mitigated in a timely manner. The Court notes that the Sixth Circuit has previously held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). In so holding, the Sixth Circuit recognized that "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id.* Defendant's medical records indicate that he received one dose of the COVID-19 vaccine in December 2021, and subsequently declined further vaccination [Sealed Doc. 875]. Given his access to the COVID-19 vaccine, the Court cannot find that defendant's risks associated with contracting COVID-19 cannot be adequately mitigated in a timely manner. Accordingly, even if defendant had established that that there was an ongoing or imminent COVID-19 outbreak at FCI Fort Dix, he nonetheless has not established that such constitutes an extraordinary and compelling grounds for release.

### 2. Defendant's Family Circumstances

Turning to defendant's family circumstances, the amended policy statement provides that the following may be extraordinary and compelling reasons for release:

17

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. . . . .

U.S.S.G. § 1B1.13(b)(3).  Defendant cites the following family circumstances in support of his motion for compassionate release: (1) his son's struggles in school and sports while defendant is incarcerated; (2) his mother's age and medical conditions, namely, stroke and brain aneurism, and her general need for help; (3) his father's age and medical conditions, namely, eye and knee replacement surgeries, and his need for help managing the family property; and (4) his wife's medical conditions, including open-heart surgery, and her difficulty managing finances without defendant.

The Court notes that, while defendant alleges that his mother, father, and wife have ongoing medical issues, he has provided no documentation to support this claim.  But, regardless, defendant has not established that any of his family circumstances are extraordinary and compelling reasons warranting relief, as he has not even alleged that he is the only available caregiver for his son, his wife, his mother, or his father.  Indeed, defendant alleges in one supplement that he has a "huge and wonderful family," [Doc. 873,

18

p. 3], and has provided no detail as to why other family members could not assist in caregiving for these individuals, even if the Court presumes that such individuals are "incapacitated." And, while the Court recognizes that defendant's family may experience hardships in his absence, "[i]ncarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, No. 1:17-cr-103, 2020 WL 3502819, at *3 (S.D. Ohio June 29, 2020). Therefore, "[i]t is an unfortunate reality that family members commonly experience hardship during a defendant's incarceration and that defendants wish to reunite with them." *United States v. Munsey-Killian*, No. 2:15-CR-107, 2023 WL 1797902, at *3 (E.D. Tenn. Feb. 7, 2023). Defendant's family circumstances, however, do not rise to the level of extraordinary and compelling reasons warranting compassionate release.

### 3. Defendant's Rehabilitative Efforts

Defendant relies heavily on his efforts at rehabilitation in support of his request for compassionate release. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). The policy statement acknowledges that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). Accordingly, while the Court recognizes that defendant has taken some steps to rehabilitate himself, such

19

efforts alone statutorily cannot constitute extraordinary and compelling grounds for release.

### 4. Defendant's Conditions of Imprisonment

Defendant also cites the prison lockdown conditions he experienced during the COVID-19 pandemic as an extraordinary and compelling ground for compassionate release. The catch-all provision of the policy statement indicates that a Court may find extraordinary and compelling reasons when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

The Court does not find that prison lockdown conditions during the COVID-19 pandemic, which were instituted to protect the health and safety of inmates, constitutes an extraordinary and compelling ground for compassionate release comparable to those listed in § 1B1.13(b)(1)–(4). The Court notes that "[g]eneralized statements about the conditions of confinement do not constitute compelling reasons for compassionate release." *United States v. Allard*, No. 5:00-110, 2022 WL 11859598, at *2 (E.D. Ky. Oct. 20, 2022) (internal quotation marks omitted). And, of course, COVID-19 lockdown conditions cannot be said to be "extraordinary," at least as to defendant specifically, as the same conditions were experienced by all inmates in defendant's facility, and similar conditions were experienced by inmates in facilities across the country. *See id.* (stating that "because all the inmates at [defendant's facility] presumably suffer from the same allegedly poor treatment, those

20

conditions do not provide a reason why [defendant] specifically should be released"). Finally, to the extent that defendant claims the prison conditions constitute cruel and unusual treatment in violation of the Eighth Amendment, "such a claim would be best addressed in a civil lawsuit, rather than in a claim for relief pursuant to Section 3582(c)." *Id*.

### 5.    Change in the Law

Turning to defendant's arguments that a change in the law renders him no longer a career offender, the policy statement indicates:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).  With the exception of changes in the law that fall within this section, changes in the law "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."  U.S.S.G. § 1B1.13(c).

Defendant's claim that a change in the law constitutes an extraordinary and compelling ground in this case fails for several reasons.  First, defendant did not receive an "unusually long sentence."  *See* § 1B1.13(b)(6).  Indeed, after the Court departed downward, defendant received a sentence of 165 months, which was well below his guideline range of 262 to 327 months' imprisonment [Doc. 278 ¶ 122].  Second, defendant

21

has not served at least 10 years of his term of imprisonment. The record, instead, reflects that defendant has only been in federal custody since June 14, 2018 [Doc. 278, p. 2 ("Release Status")].

Third, and most importantly, even if defendant met the other criteria of § 1B1.13(b)(6), the supposed "change in the law" defendant cites has been supplanted, and therefore, there would be no change in the calculation of defendant's guideline range if he were sentenced today. Section 4B1.1(a) states:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). At the time of defendant's sentencing § 4B1.2 then defined a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

U.S.S.G. § 4B1.2(b) (2018). The commentary to § 4B1.2 explained that the terms "crime of violence" and "controlled substance offense" in that section "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. n.1 (2018).

22

In 2019, the Sixth Circuit, sitting *en banc*, held that the Guidelines' definition of "controlled substance offense" does not include attempt crimes. *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019). In so holding, the Sixth Circuit acknowledged that Application Note 1 to § 4B1.2 added attempt crimes to the list of controlled substance offenses. *Id.* at 386. However, the Sixth Circuit stated that the commentary to the Guidelines "has no independent legal force—it serves only to interpret the Guidelines' text, not to replace or modify it." *Id*. And "the Commission used Application Note 1 to *add* an offense not listed in the guideline." *Id*. (emphasis in original). Therefore, the Sixth Circuit concluded that "[t]he Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substances offenses." *Id.* at 387. The Sixth Circuit subsequently held that "because the Guidelines' definition of 'controlled substance offense' does not include conspiracy crimes," a district court erred in basing a career offender designation on a conspiracy conviction. *United States v. Butler*, 812 F. App'x 311, 314–15 (6th Cir. 2020).

However, effective November 1, 2023, § 4B1.2 of the Guidelines was amended. The current Guidelines define a controlled substance offense as:

> an offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (1)     prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

23

(2)     is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

U.S.S.G. § 4B1.2(b) (2023).  The text of the Guideline goes on to state that "[t]he terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense."  U.S.S.G. § 4B1.2(d) (2023).

In light of this amendment to § 4B1.2, defendant's offense of conviction, conspiracy to distribute 50 grams or more of methamphetamine, constitutes a "controlled substance offense," as defined in the text of the current guideline.  Accordingly, although *Havis* was a non-retroactive judicial decision announcing a new rule of criminal procedure, *see United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022), further legal changes, namely, the 2023 Guideline Amendments, effective November 1, 2023, have rendered *Havis* inapplicable to defendant.  Thus, even if the Court could consider a change in the law as an extraordinary and compelling reason in this case, and even if the Court could find that *Havis* was a "change in the law," there is no change in the law that would benefit defendant.

### 6.     Combination of Factors

The Court has fully considered all of defendant's purported extraordinary and compelling grounds for release individually, as discussed *supra*.  However, the Court has also considered each of these purported grounds in combination with one another, but finds that, even in combination, defendant has not alleged extraordinary and compelling grounds for compassionate release.  Accordingly, his second request for compassionate release [Doc. 829] is **DENIED**.

24

### iii. Section 3553(a) Factors

Moreover, even if defendant had established extraordinary and compelling grounds for compassionate release, the Court finds that the § 3553(a) factors weigh against granting compassionate release.

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *Id*.

In concluding that the § 3553(a) factors weigh against granting compassionate release, the Court adopts and incorporates its prior ruling [Doc. 780]. Specifically, the Court finds:

> [t]his was a serious drug crime, and given defendant's career offender status and extensive criminal history, he faced a guideline imprisonment range of 262 to 327 months [[Doc. 278] at ¶ 122]. The Court took all of this information, as well as all the other evidence of record, into account in

25

fashioning a sentence which was sufficient, but not greater than necessary, to reflect, among other things, the serious nature of the offense, the need to promote respect for the law and provide just punishment, the need for adequate deterrence both as to this defendant and to the public at large, and to protect the public from further crimes by this defendant. Taking all relevant evidence into account, the Court imposed a below guideline range sentence of 165 months [Doc. 560].

In light of the serious nature of the instant drug crime, coupled with defendant's extensive criminal history, which includes multiple counts of violent crimes such as assault, aggravated assault, and domestic abuse, the Court finds that the § 3553(a) factors weigh against releasing defendant.

[Doc. 780, pp. 6–7]. And, as previously, the Court has considered defendant's medical condition, rehabilitative efforts, family circumstances, and other grounds discussed above, but finds that these factors do not outweigh the other § 3553(a) factors. Accordingly, on this alternative ground, defendant's motion for compassionate release [Doc. 829] is **DENIED**.

## III.    Rule 60 Motion

Defendant has also filed a "Motion for USCS Fed Rules Civ Proc Rule 60 Relief from a Judgment or Order" [Doc. 871]. In this motion, defendant states he has "discovered a breach of" his plea agreement because he "did not receive the 3 level reduction for acceptance of responsibility" [*Id.* at 1]. Accordingly, he states that he would like his sentence to be corrected for plain error [*Id.*].

The government responds that Rule 60 does not provide any grounds for modifying a sentence, as it applies to civil matters, not criminal proceedings [Doc. 876, p. 1]. Additionally, the government notes that it explicitly requested the third-level reduction for

26

acceptance of responsibility at the plea hearing, which was already calculated into the PSR's guideline range [*Id.* at 2].

Defendant subsequently field a "Notice of Appeal for Rule 60 Motion in Eastern District Court Knoxville Tennessee, Oct. 11, 2023" [Doc. 887], which the Court interprets as a reply or supplement to his Rule 60 motion, as no ruling had been issued on the pending Rule 60 motion to appeal. Defendant appears to confuse his own motions, stating "nowhere in the motion does it say anything about me saying that I didn't received [sic] acceptance of responsibility. Its [sic] about me being illegal sentenced as a career offender" [*Id.* at 1]. Defendant then reiterates his argument about his career-offender enhancement, as set forth above with regard to his compassionate release motion [*Id.* at 1–2].

To the extent that defendant seeks relief under Federal Rule of Civil Procedure 60, such rule is applicable only to *civil* proceedings, and thus has no application in this *criminal* proceeding. Defendant has cited no statutory ground for the relief he seeks in this motion. And, as the Court noted previously, "[a] court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The Court accordingly lacks any authority to modify defendant's sentence.

However, even to the extent the Court had such authority, the Court notes that, contrary to his assertion in his reply, defendant did in fact argue in his motion that he was denied a third-level reduction for acceptance of responsibility in violation of the terms of

his plea agreement [Doc. 871, p. 1]. But this claim is belied by the record, as defendant did receive a third-level reduction for acceptance of responsibility [Doc. 278 ¶ 78]. Furthermore, to the extent that defendant seeks relief on the ground of his allegedly erroneous career-offender classification, the Court notes that defendant's argument fails for the reasons explained in Section II.C.ii.5. Accordingly, defendant's "Motion for USCS Fed Rules Civ Proc Rule 60 Relief from a Judgment or Order" [Doc. 871] is **DENIED**.

## V. Rule 36 Motion

Defendant also filed a "Motion for USCS Fed Rules Crim Proc R 36 Clerical Error" arguing that the PSR incorrectly calculated his guideline range with application of the career offender enhancement [Doc. 879, p. 1]. As in his compassionate release motion, defendant argues that he should not have been deemed a career offender as his instant offense was not a "controlled substance offense" because only the commentary to the Guidelines, rather than the guideline itself, included inchoate offenses [*Id.* at 1–2]. Defendant concludes that his time spent in custody plus earned credits should result in him receiving a reduced sentence of time served [*Id.* at 3].

Federal Rule of Criminal Procedure 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." The Sixth Circuit has held that that, for purposes of this rule, "a clerical error must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *United States v.*

28

*Robinson*, 368 F.3d 653, 656 (6th Cir. 2004) (internal quotation marks omitted). "Rule 36 has consistently been interpreted as dealing only with clerical errors, not with mistakes or omissions by the court." *Id.* Errors in a presentence report's discussion of a defendant's criminal history, which may impact a defendant's status as a career offender, calculation of criminal history points, and length of sentence are "not 'minor' or 'uncontroversial' and thus may not be properly resolved in a Rule 36 motion." *United States v. Rich*, No. 17-20032, 2021 WL 2935247, at *3 (E.D. Mich. July 13, 2021).

Defendant's argument that he was improperly classified as a career offender is not a "clerical error" within the meaning of Rule 36. Instead, such argument is a claim of substantive legal error by the Court. Accordingly, defendant may not obtain relief under Rule 36. And, yet again, "[a] court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *Thompson*, 714 F.3d at 948 . The Court accordingly lacks any authority to modify defendant's sentence.

But, once again, even if the Court had authority to grant the relief requested in this motion, the Court again finds that defendant's argument regarding his career offender classification lacks merit for the reasons set forth more fully in Section II.C.ii.5 of this Memorandum Opinion and Order. Defendant's "Motion for USCS Fed Rules Crim Proc R 36 Clerical Error" [Doc. 879] is therefore **DENIED**.

## VI.    Section 2241 Petition

Defendant also filed a "Motion under 28 USC § 2241 Challenging the Misapplication of a Sentence Enhancement" [Doc. 880].  Defendant again argues that he was incorrectly deemed a career offender [*Id.* at 1].  He argues that he may bring his claim under § 2241 because he was sentenced pre-*Booker*, and because he is procedurally barred from attacking the legality of his sentence under § 2255 [*Id.*].  He contends that "misapplication of the Sentencing Guidelines, at least where (as here) I was sentenced in the pre-Booker era, represents a fundamental defect that constitutes a miscarriage of justice corrigible in a § 2241 proceeding" [*Id.* at 2].

Defendant subsequently filed a supplement stating that he erroneously stated in his § 2241 petition that he was sentenced pre-*Booker*, but he was actually sentenced post-*Booker* [Doc. 881, p. 1].  Defendant nevertheless contends that his "sentence has always been unlawful.  Especially now" [*Id.*].

The legality of a defendant's detention is properly challenged under 28 U.S.C. § 2255, while the manner or execution of a sentence is properly challenged under § 2241. *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012).  A prisoner may challenge the legality of his detention under § 2241 if a § 2255 motion would be inadequate or ineffective.  *Id*. at 307.  However, remedy under § 2255 is not inadequate simply because defendant is unable to bring another § 2255 motion or has been denied permission to file second or successive motions.  *Id*.

"Generally, a federal prisoner may not use 28 U.S.C. § 2241 to challenge the enhancement of his sentence." *Pruitt v. Williams*, No. 4:19-cv-1455, 2021 WL 4865203, at *1 (N.D. Ohio Sept. 20, 2021). The Sixth Circuit has held that a prisoner may challenge a sentence enhancement in a § 2241 in the following circumstances:

> (1) prisoners who were sentenced under the mandatory guidelines regime pre-*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), (2) who were foreclosed from filing a successive petitioner under § 2255, and (3) when a subsequent, retroactive change in statutory interpretation by the Supreme Court reveals that a previous conviction is not a predicate offense for a career-offender enhancement.

*Hill v. Masters*, 836 F.3d 591, 599–600 (6th Cir. 2016).

Here, defendant's challenge to his career-offender classification is a challenge to the legality of his sentence, which is properly brought under § 2255 not § 2241. And defendant's argument does not fall within the exception set forth in *Hill*. As defendant acknowledged in his supplement [Doc. 881, p. 1], he was sentenced in 2019, well after *Booker* decided that the Guidelines were advisory, not mandatory [Doc. 560]. Accordingly, defendant cannot rely on *Hill*'s exception to seek relief under § 2241.

Furthermore, even if defendant could seek relief under § 2241, his argument regarding the application of *Havis* to his case is meritless for the reasons set forth more fully in Section II.C.ii.5 of this Memorandum Opinion and Order. Defendant's Motion under 28 USC § 2241 Challenging the Misapplication of a Sentence Enhancement" [Doc. 880] is therefore **DENIED**.

31

## VII. Motion to Correct Unlawful Sentence

Finally, defendant filed a "Motion to Correct My Unlawful Sentence as a Career Offender under Federal Law" [Doc. 882]. Defendant reiterates that his instant offense is not a "controlled substance offense," and therefore, he was incorrectly labeled a career offender [*Id.* at 1]. He states that his attorney had him agree to an illegal sentence which "makes my plea illegal and unvoluntary and unknowing" and "voids the whole process" [*Id.*]. He contends that his trial counsel lied to him and tricked him into pleading guilty when he never even had any drugs [*Id.* at 1–2]. He contends that his attorney's failure to object to error in the PSR was deficient performance [*Id.* at 2–3].

Defendant cites no statutory grounds for the requested relief. And, again, "[a] court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *Thompson*, 714 F.3d at 948.

Nonetheless, defendant's arguments in this motion seem most appropriately construed as claims under § 2255, challenging the validity of his conviction and sentence. But as defendant has already litigated a 28 U.S.C. § 2255 motion on the merits [*see* Docs. 718, 883, 884], another motion challenging his sentence is a second or successive one. Under the Antiterrorism and Effective Death Penalty Act of 1996, petitioner cannot file a second or successive § 2255 motion in this Court until he has moved in the Sixth Circuit Court of Appeals for an order authorizing this Court to consider the motion. 28 U.S.C. § 2255(h). The Court has not received any such order.

The Sixth Circuit has directed that when a "§ 2255 motion is filed in the district court without § 2244(b)(3) authorization from [the Sixth Circuit], the district court shall transfer the document to [the Sixth Circuit] pursuant to 28 U.S.C. § 1631." Accordingly, the Court construes defendant's "Motion to Correct My Unlawful Sentence as a Career Offender under Federal Law" [Doc. 882] as a second or successive motion pursuant to 28 U.S.C. § 2255 and the Clerk is **DIRECTED** to **TRANSFER** this motion [Doc. 882] to the Sixth Circuit under 28 U.S.C. § 1631 for authorization.

## VII. Conclusion

For the reasons set forth more fully above, defendant's motions [Docs. 829, 871, 877, 879, 880] are **DENIED**, with the exception of defendant's "Motion to Correct My Unlawful Sentence as a Career Offender under Federal Law" [Doc. 882] which the Clerk is **DIRECTED** to **TRANSFER** to the Sixth Circuit under 28 U.S.C. § 1631 for authorization.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE